F. ZAYAS, *S. en C.,* Plaintiff and Appellee, *v.* RAMONA TORRES ARROYO ET AL., Defendants and Appellees.

No. 7183. Argued June 8, 1937.—Decided June 24, 1937.

*Angel Fiol Negrón* and *Luciano Colón* for appellants. *Fernando Zapater* and *Raúl Matos* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

The complaint filed in this case sets forth two causes of action, both for the recovery of money, the sum of $655.76 being claimed in the first, and that of $380.15 in the second. In both it is alleged that Tomasa Arroyo, mother with *patria potestas* over the defendant minors, *being authorized by the District Court of Ponce,* borrowed from the plaintiff commercial partnership, on an open account, money and merchandise for the purpose of repairing two properties of said minors which had been damaged by the San Felipe hurricane that swept over this island on September 13, 1928; and that both accounts were liquidated by mutual agreement and the liquidation of both submitted to the approval of the District Court of Ponce, which authorized the mother of the defendant minors to accept the balances shown, which are still unpaid. Prayer was made for a judgment for the total sum of $1,035.91, with interest thereon, costs, and attorney's fees.

A general demurrer for lack of facts to constitute a cause of action was overruled, and the defendants filed their answer, denying the essential allegations of the complaint.

It is sought by the present appeal to reverse the judgment entered in favor of the plaintiff partnership and against the defendant minors, in accordance with the prayer of the complaint.

As a basis for the appeal it is urged that the judgment is contrary to the law and the evidence.

In support of its allegation that the debts were contracted by the mother of the defendant minors with the authorization of the District Court of Ponce, the plaintiff introduced in evidence, over the objection of the defendants, the record of case No. 3814, a proceeding of utility and necessity instituted by Tomasa Arroyo, *ex parte* before the District Court

of Ponce on May 17, 1929. The petitioner, mother of the minors, alleged in said proceeding that the minors were the owners of two rural properties valued at six thousand dollars; and that said minors were indebted to Francisco Zayas *in the sum of $1,160, on account of money advanced for agricultural purposes during the last year (1928) and for the reconstruction of the properties, due to the destruction caused by the San Felipe hurricane.* To raise funds for the payment of said debt and to build a house for the machinery, to buy milch cows, and to meet other expenses which it was alleged were necessary and convenient, the petitioner prayed for authorization to borrow the sum of $2,000 from the Federal Land Bank of Baltimore. In support of her petition two statements of account were presented: one for $666.76 with a balance of $655.76, and the other for $380.15. From the first statement it appears that the majority of the charges, amounting to $390.99, were made prior to September 17, 1928, the date of the hurricane, and that the remaining charges, totalling $275.77, were made subsequent to that date. The other account is divided as follows: prior to the hurricane, $339.42. Subsequent thereto, $40.73. It appears from the record that the district court, after hearing the prosecuting attorney, entered judgment declaring both debts justified and also the necessity and utility of the investments proposed, and authorizing the contracting of the loan. This loan was never made.

In said proceeding No. 3814, the petitioning mother of the minors testified thus:

"Attorney: Do you owe anything . . . or not; have you any debts contracted on account of the demages caused by the hurricane, and for the reconstruction of said property do you owe anyone any sum of money?

"Petitioner: Yes, sir.

"A. Two whom do you owe; to Francisco Zayas, do you owe him anything?

"P. We owe him a large sum . . . something like one thousand dollars.

"Judge: Do you live in the property, madam?

"P. Yes, sir.

"J. Who administers it?

"P. The property is administered by Ernesto Bodón."

It appears from the record that Ernesto Bodón is the second husband of Tomasa Arroyo and therefore he is the foster father of the minors, and that Tomasa Arroyo is an ignorant and illiterate woman. At the trial she stated that she never opened nor authorized anyone to open any account with the plaintiff concern in the name of the minors; that the accounts were opened by her husband Ernesto Bodón; that she went to testify at the hearing of the proceedings for utility and necessity because Bodón forced her, telling her what she had to testify; that Ernesto Bodón has two mistresses; that Bodón mortgaged her property and did not give her the proceeds of the mortgage; that her property—that of Tomasa Arroyo—is now in the hands of the Pierazzi as a result of the mortgage made by Bodón.

The contention of the appellants is that neither the father nor the mother can contract obligations in the name of the minors, without the previous authorization of the proper district court; and the approval *a posteriori* by said court is not legally sufficient to ratify obligations contracted without a previous authorization.

Section 159 of the Civil Code (1930 ed.) provides that the exercise of the *patria potestas* does not authorize the father or the mother to alienate or lay any encumbrance upon property belonging to a minor without the previous authorization of the district court. It seems logical and just to maintain that if for the constitution of a mortgage, which is a secondary obligation, over property of a minor, the previous authorization of the district court is necessary, said previous authorization must also be required as a necessary legal requirement for the validity of the principal obligation which

is to be secured by the mortgage. The lawmaker has imposed on the district court the duty to ascertain and be convinced of the utility and necessity for the minor of the acts or contracts which are to be executed in his name, before exercising the power conferred upon by law to authorize such acts or contracts. See sections 614 to 616 of the Code of Civil Procedure (1933 ed.). In order to hold that the father or the mother of a minor may borrow money without the previous authorization of the district court and without first showing the necessity and utility for the minor of such transaction; and that the parent can dispose of said money at will; and that such an obligation which is void *ab initio,* may be ratified by a judicial approval granted *a posteriori,* it would be necessary to disregard the spirit of the law and the clear intention of the legislator, by converting the judicial intervention into an ineffective and empty formality.

In the case of *Longpré* v. *Díaz,* 237 U. S. 512, the mother of the minor, without the previous authorization of the district court, made a contract of partition by virtue of which she conveyed a property to a creditor in payment of debts of the estate. After the contract was executed and filed in the protocol of a notary, the same was submitted to the Distric Court of Humacao, which approved it and ordered its record in the registry of property. In holding the transaction void, the Federal Supreme Court said:

". . . . And we are of opinion moreover that by the same token it conclusively results that the judge of the court of first instance of Humacao was absolutely without jurisdiction to approve the so-called voluntary partition proceedings and therefore that no rights whatever arose from such sanction."

The grounds on which the lower court based its judgment against the defendant minors were: first, that in the proceeding No. 3814, the mother of the minors acknowledged that the latter owed to the plaintiff firm the sums claimed by it; second, that it appeared from the testimony

of said witness and from that of the witness Antonio Báez, that the accounts existed and that the groceries were really bought; and, third, that the testimony given by the mother of the minors at the trial to the effect that the accounts were opened by the foster father of the minors and that he forced the mother to testify as she did in the said proceeding were not sufficient to overcome the testimony given by Tomasa Arroyo in the proceeding for judicial authorization.

We have made a careful study of the pleadings and of the evidence, both in the authorization proceedings and in the case at bar. The inconsistencies between the allegations and the evidence in both cases are as manifest as they are important. And we are going to point them out.

1st. In the complaint it is alleged that the mother of the minors *being authorized by the district court,* borrowed on an open account the sums claimed by the plaintiff; and the proceeding of utility and necessity unquestionably shows that the debts were contracted without judicial authorization.

2nd. In the proceeding and in the complaint it is alleged that the sums claimed by the plaintiff were borrowed by the mother of the minors for the purpose of reconstructing the properties belonging to said minors which were damaged by the San Felipe hurricane; and the statement of account presented by the plaintiff itself shows that $730.41 out of the $1,035.91 claimed was borrowed prior to the date of the said hurricane. There is nothing in the record to show that the sums borrowed prior to that date were applied to rebuilding the properties of the minors.

3rd. Neither in the proceeding nor in the complaint was it alleged that the sums claimed represented the value of the merchandise supplied for the support of the minors. The testimonial evidence presented in the proceeding of utility and necessity and at the trial of the case at bar tended to establish that fact, but in neither of the cases was there any

evidence introduced regarding the nature, quantity, and price of the groceries supplied to the minors. The statements of account presented in evidence only contain the dates and the total of each invoice, without any other specification or detail.

The witness Antonio Báez, to whom the trial court seems to have accorded full credence, worked in the property of Tomasa Arroyo from ever since the time when Domingo Torres, the first husband and father of the minors, was still alive. Báez testified thus: That he was the person who went to the Zayas establishment to get supplies each Friday; that Ernesto Bodón was the one who sent him with loads of fruits from the property; that he sold the fruits and delivered the money to Bodón; that he made purchases in the Zayas establishment, and charged the same to the account of Bodón; that he, the witness, used to make three purchases, one of which he delivered to Amalia, another to Josefa, both mistresses of Bodón, and the third to Tomasa Arroyo; that the latter was a rich woman when her first husband was alive and that when she lost all her money Bodón abandoned her. And when the judge asked him where was Bodón he answered: "Bodón is now living in a property over there; because he got money to buy another property; he is lying down, he is eating, he is drinking, and his wife has had to beg for a bunch of bananas, and he is eating and drinking and he has a good property, in the ward of Monte Llanos."

The testimony of this witness, in our opinion candid and truthful, depicts vividly the situation of these minors. The children of an ignorant woman, their property, together with that of their mother, is managed by the foster father, who disposes of its products, receives the price thereof, and does not account to anybody for his administration. It is true that the foster father ordered supplies in the house of the plaintiff partnership, but it is also true that said supplies were distributed between the home of the minors and those of the two mistresses supported by Bodón. The evidence fails

to show whether what is sought to be recovered from the defendant minors is only what was delivered to them for their support, or whether the accounts offered in evidence also include the merchandise and supplies delivered to the mistresses of the foster father. In view of such an insufficient evidence, it is our duty to decide that the judgment appealed from can not be sustained.

The lower court erred in considering as conclusive proof of the claim the judgment entered *ex parte* in the utility and necessity proceeding. The defendant minors are not estopped to attack the sufficiency of the evidence which served as a basis for said judgment. And, in our view, that evidence was clearly insufficient to support the claim of the plaintiff as an obligation enforceable against the minors, defendants herein.

We are of the opinion that the evidence introduced by the plaintiff is insufficient to support the judgment appealed from, and that said judgment must be reversed.

Mr. Justice Córdova Dávila took no part in the decision of this case.